## BACKUS v. COWLEY.

1. TAXATION—PURCHASE OF STATE—NOTICE TO REDEEM.
   One claiming title by quitclaim from the original purchaser of State tax lands, is limited to the amount and interest which she proves, and in case of her failure to show a tax deed for more than one year, will be limited to that year, although other taxes were unpaid at the time of the purchase.

2. SAME—DEEDS—QUITCLAIM—GOOD FAITH.
   Those who take by quitclaim deed are not bona fide purchasers, and take only the interest which their grantor had.

3. PRINCIPAL AND AGENT—TRUST RELATION — ADVERSE INTEREST OF AGENT.
   The purchaser of timber, upon land which is held for delinquent taxes that the owner directs the purchaser to pay, and charge to her acccount, becomes her agent for that purpose.

4. SAME—STATUTE OF FRAUDS—TRUSTS.
   The defense of the statute of frauds is not available to an agent that purchases, in his own name, without the knowledge or consent of his principal, State tax lands which he has been directed to redeem on behalf of the owner from funds to be paid her for timber purchased.

5. SAME—FRAUD.
   Such a purchase is a fraud on the principal.

6. SAME—TRUSTS—STATUTES.
   And would be governed by the exception to the statute prohibiting resulting trusts.   3 Comp. Laws, §§ 8835, 8836.

7. SAME—FIDUCIARY RELATIONS.

   While the relation so created was not a strict fiduciary rela-
   tion, the vendee of the timber owed the vendor loyalty and
   good faith.

8. TAXATION — STATE TAX LANDS — LACHES — BONA FIDE PUR-
   CHASER.

   A purchaser of tax titles more than six years old, by quitclaim
   deed, who pays less than the amount required for redemp-
   tion, cannot be considered a bona fide purchaser, and has
   notice of the stale character of the claim. Act No. 58, Pub.
   Acts 1907.

9. SAME—PRINCIPAL AND AGENT—ATTORNEY.

   Such notice and knowledge is chargeable to the attorney and
   adviser, who accepted a conveyance of her interest from the
   purchaser of the tax interest.

Appeal from Alcona; Connine, J.   Submitted June 7,
1910.   (Docket No. 3.)   Decided September 27, 1910.

Bill by Newton D. Backus, administrator of the estate
of Sarah E. Backus, deceased, against Lilian N. Cowley,
the Au Sable River Lumber Company, and John H.
Killmaster to set aside certain deeds.   Defendants Cowley
and Killmaster filed an answer in the nature of a cross-
bill to quiet title to said land.   From a decree for defend-
ants, complainant appeals.   Reversed, and decree entered
for complainant.

*Albert McClatchey*, for complainant.

*John H. Killmaster* (*Ward B. Connine*, of counsel),
for defendants.

McALVAY, J.   The bill filed by Sarah E. Backus as
complainant in this case prayed that a certain State tax
deed be decreed void, and that the cloud upon her title
created thereby be removed; she claiming to be the owner
of the lands described in said deed.   After filing her bill,
and before a hearing of the cause, Mrs. Backus died.   In
the original bill of complaint the Au Sable River Lumber
Company and Lilian N. Cowley were parties defendant.

After complainant's death, the cause was revived in the name of her administrator, and an amended bill was filed by him, setting up the fact of her death and the revival of the cause, and also making John H. Killmaster a party defendant by reason of a conveyance of part of the land in question to him by defendant Cowley. The bill of complaint was taken as confessed by defendant Au Sable River Lumber Company. Defendants Cowley and Killmaster answered separately, denying complainant's equities and each asked for affirmative relief. Upon the issues joined, the cause was heard, resulting in a decree dismissing complainant's bill, and granting defendants Cowley and Killmaster the affirmative relief prayed, decreeing and confirming title in said lands in fee in them, as claimed. Complainant has appealed.

Sarah E. Backus during the later years of her life resided with her son, Henry N. Backus, in Detroit. She owned about 2,000 acres of land in Alcona county, including the lands involved in this suit. Her son, Henry, attended to some of her business. Philip Curran had general charge of these lands for Mrs. Backus, and looked after her interests for 14 years. On November 2, 1901, Curran, in the name of H. N. Backus, entered into an agreement in writing with defendant Au Sable River Lumber Company for the sale and delivery of certain logs, posts, ties, etc., to be cut and delivered for the prices stipulated, and to be paid for by defendant company as fast as banked on Backus Creek. Under this agreement, Mr. Curran caused this timber to be cut from these lands and delivered according to its terms, beginning in November, 1901, and finishing in March following. While so engaged Curran was notified by the State trespass agent that there were unpaid taxes against the land which must be paid, or the cutting discontinued. Curran then went to the defendant company's office, and stated to its secretary that the taxes must be paid, and asked for an advance of money to pay them to be charged up to this timber contract. This was agreed upon, and the sec-

retary sent the money and paid these taxes to the amount
of $354.88, being the amount of taxes on these lands for
the years 1895 to 1899, inclusive, and charged that
amount against this Backus timber contract account, and
the same was paid in full by charging it as a payment
made on the timber delivered under it. This also appears
from a letter written by defendant company to H. N.
Backus on January 11, 1902, stating that the above con-
tract had been made, requesting a confirmation of it and
asking advice as to how payment for timber should be
made. The letter proceeds:

"Since buying the logs we have paid up $350 back
taxes on the land after being asked to do so by Mr. Cur-
ran; this we have charged up to Mr. Curran. Since
making the contract we have learned that this timber and
land stands in the name of Sarah E. Backus. Such be-
ing the case, this contract should include her as one of the
first parties and another very important thing for us to
know is whether these scale bills are all to be paid to Phil
Curran or whether you want us to hold back the stump-
age."

It also appears that the timber account was kept in the
name of Curran, and that a written statement of such ac-
count made out and delivered to Curran shows $354.88,
amount paid for taxes charged by defendant company.
After this statement more timber was delivered. On
February 4th money was due and payable from defend-
ant company on the above contract over and above the
amount paid for taxes, which was withheld for instruc-
tions asked for in letters. Curran on that date tele-
graphed H. N. Backus:

"Wire Au Sable River Lumber Co. regarding their
letters to you; they defer payment awaiting your reply."

Not satisfied with the answer to this telegram which
evidently contained an error in transmission, defendant
company on February 6, 1902, wrote Sarah E. Backus,
acknowledging the receipt of the telegram, giving its
wording as received and asking confirmation. The letter
further stated:

"In reference to the pine and cedar you did not say anything about this. * * * Kindly advise us how the payments are to be made on white pine and cedar."

At the time operations under the contract ended, March 8, 1902, the defendant company had been paid all claims and owed $125 for a bridge torn down by its men, which it agreed to pay. Nothing was heard of this transaction relative to the payment of these taxes until about six years later, January 22, 1908, when Mrs. Backus received statu-tory notice from defendant L. N. Cowley to redeem from tax title these lands for the years for which defendant company had paid them for complainant, with a state-ment that she had acquired title by virtue of a conveyance from the Au Sable River Lumber Company, "said com-pany having become the purchaser of the taxes against said lands for the years mentioned," the amount claimed as necessary to redeem being $642.94.

Defendant Cowley was dealing in tax titles. Defend-ant Killmaster is her attorney who advised her to buy these titles from defendant Au Sable River Lumber Com-pany. The claimed interest of defendant company was conveyed to her for the aggregate consideration of $130 by two quitclaim deeds dated, respectively, January 4, and January 10, 1908. On January 31, 1908, defendant Cowley quitclaimed two of these descriptions of land to defendant Killmaster. In 1907 defendant Cowley pur-chased from the State tax titles on these lands for years 1902 to 1905, inclusive, gave notice to redeem to Mrs. Backus, redemption was made, and she conveyed her in-terest to her. In showing title from the State to defend-ant Au Sable River Lumber Company defendants put in evidence but one State tax deed dated January 6, 1902, which conveyed these lands to said company for taxes for the year 1897 for the sum of $68.44. No showing what-ever was made by tax receipts, certificates, or deeds that taxes for the years 1895, 1896, 1898, and 1899 had been paid as a condition of purchase when the State deeded to the company. There is no dispute in this record upon the

facts. That the company was the agent of and acting for Mrs. Backus in paying taxes at the request of her agent as shown by this record is proved beyond dispute. The contesting defendants do not admit this.

Defendant company, by allowing this bill of complaint to be taken as confessed, has admitted, not only the allegation that it was a Michigan corporation, but also that all of the facts charged in the bill of complaint against it relative to its relations with complainant's decedent are true. Upon this branch of the case, it would be a waste of time to repeat the facts for the purpose of showing that a valid contract in writing was entered into between the parties by their agents relative to the sale of certain timber, the ratification of the contract by the principals, and its complete performance.

When at agent Curran's request defendant company paid the demand of the State against the lands in question and charged the amount paid as agreed against the logging contract, such act was in effect a payment and redemption by the owner, Mrs. Backus, and was so treated by defendant company and admitted in the letters written by it in relation thereto. *Hoffman* v. *Auditor General*, 136 Mich. 691, 692 ( 100 N. W. 180 ). As agent of Mrs. Backus to pay taxes and redeem her land, this defendant could not obtain title by purchasing in its own name because it owed duties to her which were incompatible with it. *Kimball* v. *Ranney*, 122 Mich. 160 ( 80 N. W. 992, 46 L. R. A. 403, 80 Am. St. Rep. 548 ). Defendant company never made any claim or asserted any right in said lands to the original owner or her representatives by reason of the purchase in its own name, and could not acquire a title by taking a deed, under the circumstances, in its own name, without the knowledge or consent of the owner. *Linsley* v. *Sinclair*, 24 Mich. 380; *McCreary* v. *McCreary*, 90 Mich. 478 ( 51 N. W. 545 ). It appears from the record that no such claim was ever asserted by putting its deed upon record. On January 8, 1908, defendant Cowley caused to be recorded a deed purporting

to convey to defendant Au Sable River Lumber Company the title of the State of Michigan to the lands in question for taxes for the year 1897. Said deed being dated January 6, 1902, and recorded on the same date, she caused to be recorded the first quitclaim deed from the company to her dated January 4, 1908. The second quitclaim to her was dated January 10, 1908, and recorded January 15, 1909. The only tax deed from the State to defendant company she produces was for taxes for the year 1897 in consideration of $68.44. Her notice to redeem dated January 16, 1908, claiming a payment aggregating $642.94, plus sheriff's fees, was served on Mrs. Backus in Detroit January 29, 1908. This was the first notice to her of the claimed title arising from the payment and redemption of taxes made as already recited for her by defendant company.

In proving her claimed title from the State, defendant Cowley has shown title for taxes of but one year. She claims through defendant company, however, tax titles for five years without other showing than the quitclaim deed to her. Her claim for the amount necessary to redeem is not supported or warranted by her proofs. Her right and title, if valid, is limited to such as she has proved. Whether she has shown title for one year or five years will not in this case affect the result. The real question is what interest defendant company conveyed to her by its quitclaim deeds.

In *Briggs* v. *Boardman*, 135 Mich. 329 (97 N. W. 767), the grantee by deed of the owner of a tax title was denied a writ of assistance because his grantor, who had in writing agreed with the attorney of the original owner to accept an amount less than provided by statute to redeem, on tender made of the amount, refused to accept before the time agreed upon or the statutory limit had expired. In that case the court said:

"It is immaterial whether the contract between Griffin and the respondents be called a contract relating to the sale of lands, or one relating to the payment of a tax lien.

The offer was in writing, the acceptance was in writing, and the agreed price tendered in time. The transaction was valid and its effect was to avoid the tax deed. The title was then in Mr. Griffin and the petitioner took no greater interest in the property by the conveyance than Mr. Griffin had, and he had no interest."

It is also well settled in this State that "those who take by quitclaim deed are not bona fide purchasers, and take only the interest which their grantors had." *Peters* v. *Cartier*, 80 Mich. 129 (45 N. W. 73, 20 Am. St. Rep. 508); *Moore* v. *Township of Kenockee*, 75 Mich. 332 (42 N. W. 944, 4 L. R. A. 555); *Beakley* v. *Robert*, 120 Mich. 210 (79 N. W. 193); *Messenger* v. *Peter*, 129 Mich. 98 (88 N. W. 209).

In our view of the case at bar already given, defendant company was the agent of the owner to pay taxes and redeem her land; consequently the defense of the statute of frauds is not available. The act of defendant company in taking title in its name without her knowledge or consent was a fraud upon the original owner, and there is no evidence in the record of any intention to create a trust; but, if considered as a case where a trust has resulted, complainant would not be prohibited from recovering by reason of the statute of uses and trusts (section 8835, 3 Comp. Laws), as defendants contend, for the reason that this case would be within the provisions of section 8837, 3 Comp. Laws, which qualifies the section relied on. It provides:

"The preceding seventh section shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the knowledge or consent of the persons paying the consideration, or when such alienee in violation of some trust shall have purchased the lands so conveyed with moneys belonging to another person."

*Linsley* v. *Sinclair, supra,* and notes; *McCreary* v. *McCreary, supra; Connolly* v. *Keating*, 102 Mich. 4 (60 N. W. 289). The relations between Mrs. Backus and defendant company relative to this transaction have been

called fiduciary. Strictly speaking they were not, but were such as required loyalty on the part of the agent, and a duty resting upon it to deal in good faith with its principal, and is one of the relations within the statute and recognized by the authorities cited.

In addition to what has been said relative to the status of defendant Cowley under the quitclaim deeds as a bona fide purchaser, it may be added that there is evidence relative to the purchase by her which indicates want of good faith. She for less than the statutory amount necessary to redeem for the one year took the quitclaims, the next day making claim for the entire statutory amount for the five years. From this record there is no evidence of a right to make such demand.

She did this after a lapse of six years from the claimed purchase by defendant company, no demand or claim ever having been made under it. It was therefore on its face a stale claim, which was sufficient to put her upon her reasonable inquiry. She was acquainted with the owner in a business way. She had bought tax titles for subsequent years against these lands, had given Mrs. Backus notice to redeem, and on payment of her demands had made a reconveyance to her. She knew that the owner was protecting these lands against a later title than the one she was then buying, yet she made no inquiry of her as to this stale claim. The legislature had before that time fixed a limitation of five years as barring all right to assert such title or claim of lien by reason of a tax purchase. Act No. 58, Pub. Acts 1907. This is the limitation considered by the legislature as reasonable. We do not decide that this sale is within that statute, but we do hold that defendant Cowley cannot be considered a bona fide purchaser of this stale claim after the lapse of six years. What has been said relative to defendant Cowley and the title she acquired by the transfers to her is equally applicable to defendant Killmaster. He was her attorney and adviser, chargeable with her conduct and knowledge.

In all respects he must be considered in exactly her position and relation to these lands. He acquired by the conveyance from her no other or greater interest than she was entitled to assert.

It is not necessary to consider any further questions. In no view of the case can the decree of the circuit court be affirmed. It is reversed and a decree will be entered in this court in favor of complainant for all the relief prayed, and denying the defendants affirmative relief. If there are other tax titles claimed by these defendants, or either of them, against these lands which they desire to present for redemption, that course is probably open. It is not necessary to dispose of them in this case. The only titles here involved are those arising from the claimed sale by the State to defendant Au Sable River Lumber Company which are held by us to be absolutely void.

Complainant will recover costs of both courts against all of the defendants to be taxed.

BIRD, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.