*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANN LAMKIN and STEVE LAMKIN,

Plaintiffs-Appellants,

v

EUGENE HARTMEIER, CYNTHIA HARTMEIER, KEVIN HARTMEIER, DENNIS MCCOMB, GLORIA MCCOMB, DANIEL ENGRAM, DANIELLE ENGRAM, JAMES BEAUDOIN, CECILE LAUDENSLAGER, ANGELA CHRISTIE, KIMBERLY KRASKA, JOAN BEAUDOIN, AARON KIRBY, DAMON HARTMEIER, DENISE ENGRAM, DEANN ENGRAM, DEREK ENGRAM, CATHERINE BARRETT,

Defendants-Appellees,

and

RONALD THYBAULT and the Estate of MARY WECKESER,

Defendants.

UNPUBLISHED
September 17, 2019

No. 326986
Livingston Circuit Court
LC No. 12-026600-NZ

ON REMAND

Before: RONAYNE KRAUSE, P.J., and MARKEY and GADOLA, JJ.

PER CURIAM.

Plaintiffs previously appealed by right the trial court's order that, in relevant part, determined defendants to have an easement across plaintiffs' property and that defendants had not exceeded the easement. This Court unanimously held that defendants had not established an

-1-

easement by necessity, but some defendants had established valid prescriptive easements. A majority panel of this Court further held that all defendants had established a valid easement by prescription and that the trial court erred by dismissing the entirety of plaintiffs' nuisance claim. In lieu of granting leave to appeal, our Supreme Court vacated this Court's opinion in part and has remanded to us for partial reconsideration and further proceedings. On reconsideration, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

This case involves a dispute over the use of Island Shore Drive, a private dirt road that runs along the northern shore of Oneida Lake in Hamburg Township, Livingston County. The western half of Island Shore Drive is located in Section 21 of the township, and it opens to M-36, a public road. Island Shore Drive crosses property owned by plaintiffs (among others), and it is the only means by which defendants, who own property in Section 22 to the east, can physically access their respective parcels. The issue is whether, and to what extent, defendants can *legally* make use of Island Shore Drive to access their properties.

In the late 1800s, the relevant property in Section 21 to the west was owned by Thomas Shehan, and the relevant property in Section 22 to the east was owned by A. Mercer. Shehan split his property into ten lots and deeded an express easement through each lot to provide access to M-36. That easement is now known as Island Shore Drive. Mercer's property was also divided into lots. In 1922, Cady's Point Comfort Subdivision was platted out of Mercer's property, and in 1933, Island Lake Shores Subdivision was also platted out of Mercer's property. The latter plats both included a roadway, originally named Lake View Drive, that ran to the western edge of the plats. Former Lake View Drive traverses two unplatted parcels to connect to Island Shore Drive. The Cady's Point Comfort Subdivision plat was revised in 1960, but the revision retained Lake View Drive. Lake View Drive was eventually renamed Island Shore Drive.[1] Plaintiffs own two of the Shehan lots, and defendants own lots in the Mercer subdivisions.

Defendants cannot presently access their property without driving across plaintiffs' property via Island Shore Drive. Plaintiffs have asserted that defendants' properties were once accessible via another route, but there is little evidentiary support for that assertion. It is undisputed that the Section 22 properties have been landlocked except via Island Shore Drive since at least 1960, and possibly earlier. Nonetheless, there was apparently never any express, written agreement executed for Section 22 property owners to use Island Shore Drive. There is also no evidence that any of Mercer's property ever had any other access of legal right. As the previous dissenting opinion accurately explained:

> Plaintiffs asserted that at the time they purchased their property in 1980, there were only 14 year-round homes using Island Shore Drive, but by 2008, 29

---

[1] As we noted previously, the Livingston County Road Commission attempted to change the name of Lake View Drive to Island Shore Drive in 1949, but the 1949 resolution was apparently ineffective. In 2005, the Hamburg Township Board of Trustees passed a resolution that also changed the name of Lake View Drive to Island Shore Drive. Thus, "Island Shore Drive" now legally refers to the entire roadway from M-36 through defendants' properties.

year-round homes relied on the road for ingress and egress to M-36. As traffic increased, plaintiffs attempted to control the speed of vehicles using Island Shore Drive and the use of recreational vehicles by subdivision lots [sic] owners. On December 7, 2004, plaintiffs sent a memo to the lot owners in Cady's Point and Island Lake Shores, asserting that they had acquired "a **very limited** use through prescription" [(emphasis in original)] of Island Shore Drive for ingress and egress to M-36, which did not include recreational use. In 2005, plaintiffs carved inverted speedbumps (ruts) into the portion of Island Shore Drive running through their property, and placed poles in concrete blocks along the roadway. Plaintiffs asserted that after they attempted to control the use of Island Shore Drive, defendants engaged in numerous acts of harassment and retaliation against them.

We previously held unanimously that because defendants' and plaintiffs' property was never owned by a common grantor, defendants could not have an easement by necessity over Island Shore Drive. We also held unanimously that the Laudenslager, Beaudoin, and Christie defendants had established valid easements by prescription, and that defendant Kraska had established at least a valid seasonal easement by prescription. A majority panel of this Court further held that all defendants had established a valid easement by prescription, although plaintiffs could maintain a trespass claim premised on defendants exceeding or straying from the easement. The majority also held that the trial court erred by dismissing plaintiffs' nuisance claim in its entirety, particularly pertaining to the issue of noise. In lieu of granting leave to appeal, our Supreme Court vacated this Court's opinion in part and remanded, in relevant part,

> for reconsideration as to whether each defendant established a prescriptive easement in light of *Marlette Auto Wash, LLC v Van Dyke SC Properties, LLC*, 501 Mich 192[; 912 NW 161] (2018), and for reconsideration of the scope of each easement based on the manner of use by which the easement was acquired and the manner of the previous enjoyment, see *Heydon v MediaOne*, 275 Mich App 267, 271[; 739 NW2d 373] (2007). [*Lamkin v Hartmeier*, 503 Mich 891; 919 NW2d 273 (2018).]

Our Supreme Court also explicitly left untouched the prior majority's ruling as to the nuisance issue.

Plaintiffs' application for leave to appeal to our Supreme Court was mostly dedicated to the argument that the Hartmeier, Engram, and McComb defendants lack any prescriptive easement rights. Plaintiffs also contended that Kraska held at most a seasonal prescriptive easement for ingress and egress, and that the Laudenslager, Beaudoin, and Christie defendants have at most prescriptive easements limited to ingress and egress. We therefore construe our Supreme Court's order as leaving untouched the bare fact of Kraska and the Laudenslager, Beaudoin, and Christie defendants having prescriptive easements, and vacating only our prior determination of the scope of those easements. Consequently, we reject plaintiffs' arguments that Kraska and the Laudenslager, Beaudoin, and Christie defendants have *no* valid prescriptive easements. See *People v Canter*, 197 Mich App 550, 567; 496 NW2d 336 (1992) ("When a case is remanded by an appellate court, proceedings on remand are limited to the scope of the remand order."); MCR 7.305(H)(4)(a) ("Unless otherwise ordered by the [Michigan Supreme] Court, an appeal shall be limited to the issues raised in the application for leave to appeal.").

## II. STANDARD OF REVIEW

Motions for summary disposition and actions at equity are both reviewed de novo. *Beach v Twp of Lima*, 489 Mich 99, 105-106; 802 NW2d 1 (2011). When reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we review all of the record evidence in the light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. Although we review de novo whether equitable relief is proper, we review the trial court's underlying factual determinations for clear error. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008); *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007).

## III. *MARLETTE*

We first address the nature and significance of *Marlette Auto Wash, LLC v Van Dyke SC Properties, LLC*, 501 Mich 192; 912 NW 161 (2018). In *Marlette*, the plaintiff was the owner of a car wash business. The plaintiff claimed a prescriptive easement over a portion of a neighboring shopping center's parking lot for purposes of its customers' ingress and egress. *Marlette*, 501 Mich at 195-199. The car wash had been owned and operated by B & J Investment from 1989 through April 2005, and for that entire duration, car wash customers used the shopping center's parking lot as a means of ingress and egress. *Id*. at 197. The car wash then changed ownership several times before it was finally sold to Marlette Auto Wash in early 2007. *Id*. at 198. In late 2013, the owner of the shopping center, Van Dyke Properties, sought from Marlette a monthly contribution for the maintenance of the parking lot. *Id*. at 198-199. When Marlette refused, Van Dyke blocked access to the carwash through its parking lot. *Id*. at 199. The trial court concluded that a prescriptive easement benefitting the car wash had already vested in 2005. *Id*. at 199-200.

Our Supreme Court held that, in order to establish a valid claim to a prescriptive easement, a claimant need not demonstrate privity of estate with a predecessor in interest if the claimant can demonstrate that *a* predecessor had perfected a prescriptive easement over the course of the fifteen-year statutory period. *Marlette*, 501 Mich at 203-204. Specifically, "[w]hen a prescriptive easement vests with the claimant's predecessors in interest, the easement is appurtenant and transfers to subsequent owners in the property's chain of title without the need for the subsequent owner to establish privity of estate." *Id*. Thus, once a prescriptive easement vests, it runs with the land with no further action necessary. The predecessor in interest need not have taken legal action to assert a claim over the prescriptive easement in order for the easement to vest. *Id*. at 209. Accordingly, although not stated in so many words, *Marlette* held that a prescriptive easement vested and subsequently ran with the land following B & J Investment's open, notorious, uninterrupted, and hostile use of the parking lot for at least fifteen years.

On remand, defendants misconstrue *Marlette* as obviating the need for privity altogether. *Marlette* held nothing of the sort. Rather, *Marlette* explained that privity is no longer required for an easement to run with the land *after* the easement has vested. It so happened that in

*Marlette*, the requisite fifteen-year period for adverse possession was satisfied by a single party. However, *Marlette* expressly acknowledged that "[i]f 'no single period' of adverse use amounts to the fifteen-year statutory period, a party claiming a prescriptive interest may tack the possessory periods of their predecessors in interest 'to aggregate the 15-year period of prescription' if the claimant can show privity of estate." *Marlette*, 501 Mich at 203. The unambiguous significance of *Marlette* is that a prescriptive easement vests immediately and automatically upon satisfaction of the statutory requirements by either a single property owner, or a succession of property owners *in privity with each other*. Then, and only then, is any need for privity obviated. This is not a novel holding: a prescriptive easement that has already vested has always been deemed to run with the land, even where parcels are later subdivided.[2] See *von Meding v Strahl*, 319 Mich 598, 611; 30 NW2d 363 (1948).

Therefore, we conclude that our Supreme Court's order for us to consider "whether each defendant established a prescriptive easement in light of *Marlette*" implicitly instructs that any individual defendant may satisfy the statutory requirements in one of three ways: (1) personally; (2) by tacking the defendant's own use to the use of a predecessor or predecessors in privity; or (3) by showing that *any* prior owner of their property, or *any* chain of owners in privity with each other, had satisfied the statutory requirements at any time in the past.

## IV. ESTABLISHMENT AND SCOPE

"A prescriptive easement is generally limited in scope by the manner in which it was acquired and the previous enjoyment." *Heydon v MediaOne*, 275 Mich App 267, 271; 739 NW2d 373 (2007) (quotation omitted). The holder of a prescriptive easement is not altogether precluded from increasing the burden on a servient tenement where "necessary to make effective the enjoyment of the easement." *Mumrow v Riddle*, 67 Mich App 693, 699; 242 NW2d 489 (1976). Thus, the owner of an easement may perform incidental repairs or improvements, subject to a balancing between the necessity of those repairs or improvements and the reasonableness of any increased burden upon the servient tenement. *Id*. at 699-700. Ultimately, "the scope of the privilege is determined largely by what is reasonable under the circumstances." *Heydon*, 275 Mich App at 271. "The owner of an easement cannot materially increase the burden of the easement or impose a new and additional burden on the servient estate." *Id*. at 275.

A prescriptive easement is essentially indistinguishable from adverse possession, other than the requirement of exclusivity. *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010). "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). Adverse, or hostile, use does not require ill will, but rather a claim to a nonexistent right or a nonpermissive use that would give rise to an action for trespass. *Id*. at 681. Use can be "continuous" without being literally uninterrupted so long as that use is "in keeping with the nature and character of

---

[2] We caution, however, that the inheritors-by-subdivision of an easement might be permitted to increase traffic to some limited extent, but they may not collectively impose an unreasonable additional burden upon the servient estate. *Henkle v Goldenson*, 263 Mich 140, 142-143; 248 NW 574 (1933); *Bang v Forman*, 244 Mich 571, 573-576; 222 NW 96 (1928).

the right claimed." *Dyer v Thurston*, 32 Mich App 341, 344; 188 NW2d 633 (1971). As discussed, the fifteen-year period need not be satisfied by a single owner, and successive owners who are in privity with each other may "tack" their periods of adverse use together. *Siegel v Renkiwicz Estate*, 373 Mich 421, 425; 129 NW2d 876 (1964). The party claiming a prescriptive easement must prove entitlement by clear and cogent evidence. *Matthews*, 288 Mich App at 37. The "clear and cogent evidence" standard calls for "more than a preponderance of evidence, approaching the level of proof beyond a reasonable doubt." *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988).

## V. PRIVITY

Also in *Marlette*, our Supreme Court reiterated well-established case law describing the limited circumstances under which privity of estate will be found to permit tacking of successive periods of ownership. First, it has long been held that parties are in privity of estate where a deed explicitly includes the property in dispute. *Marlette*, 501 Mich at 203. That is, the land in controversy must have been expressly described in a conveyance between the two owners. See *Nichols v New England Furniture Co*, 100 Mich 230, 251; 59 NW2d 155 (1894). Second, privity might be achieved by parol statements made contemporaneously with the property conveyance. *Marlette*, 501 Mich at 203. The disputed property must be expressly transferred, but not necessarily in a formal conveyance. *Sheldon v Mich Cent Ry Co*, 161 Mich 503, 509-515; 126 NW 1056 (1910). It appears that the underlying principle was that the two periods of adverse use should not be merely coincidental. See *id*. Finally, "a parol transfer may occur if a property owner is 'well-acquainted' with the previous property owner and had visited and used the disputed property 'for many years' before acquiring title," because those circumstances indicate that the parties understood an easement to be appurtenant to the land. *Marlette*, 501 Mich at 203; see also *von Meding*, 319 Mich at 614-615.

We are not persuaded that the three methods for showing privity outlined by our Supreme Court are *strictly* exclusive. In *von Meding*, our Supreme Court held that under the circumstances of the case, it was "inescapable" that a contemporaneous parol transfer had "undoubtedly" been the parties' intentions. *von Meding*, 319 Mich at 614-615. The "clear and cogent evidence" standard for establishing a prescriptive easement "cannot be made out by inference." *Donohue v Vosper*, 189 Mich 78, 90; 155 NW 407 (1915). Therefore, a party cannot base an adverse use claim on use made by a neighbor. However, it is clear from *von Meding* that some degree of inference can be permissible to show *privity*. Thus, some other analogous circumstance might also give rise to an "inescapable" conclusion that the seller and purchaser "undoubtedly" intended an easement to be included in the conveyance, even in the absence of direct proof. The lack of any other way to access the property is an insufficient circumstance by itself to establish such a mandatory inference. However, a historic lack of alternative access is not irrelevant and can certainly be considered in conjunction with additional information or evidence.[3]

---

[3] We also note that we unanimously agreed previously, albeit for different reasons, that plaintiffs' 2004 memo was not binding or conclusive on plaintiffs or on the courts. We reiterate that holding. However, we do not believe the memo to be entirely devoid of evidentiary value.

## VI.  LAUDENSLAGER, BEAUDOIN, AND CHRISTIE DEFENDANTS

Upon reviewing the evidence and affidavits from the Laudenslager, Beaudoin, and Christie defendants, we reaffirm our prior majority holding as to those defendants, and we further adopt our previous dissenting opinion's conclusion that their easement includes the use of motorized and non-motorized vehicles, as well as walking.  Their easement also includes limited incidental uses, such as access by reasonable invitees, delivery vehicles, maintenance or utility vehicles, and emergency vehicles.  Although their easement includes some limited recreational uses, their easement does not include commercial uses.  We reiterate that this easement does not confer a right to generate nuisances, such as generating unnecessary noise or travelling at unnecessary speeds.  This easement also does not permit defendants to stray from historic boundaries of Island Shore Drive beyond what is minimally necessary to use the easement.  However, defendants are entitled to perform reasonable repairs, and plaintiffs are not permitted to intentionally damage the land to preclude defendants from being able to use it for ingress and egress.  Additionally, as our previous dissent pointed out, the Christie defendants have also acquired a right to continue walking their dog on the easement.

## VII.  REMAINING DEFENDANTS

The evidence in the record clearly establishes that none of the remaining defendants could possibly have any greater rights than the Laudenslager, Beaudoin, and Christie defendants as discussed above.  We further reaffirm that Kraska has the same rights as the Laudenslager, Beaudoin, and Christie defendants, at least for seasonal use.  We note that we denied defendants' motion to take judicial notice and expand the record.  Were we to address what rights the remaining defendants have established on the record as originally provided to us, we would not unanimously agree on the outcome.  However, we are sufficiently concerned by the equities of this matter that we conclude the parties should have the opportunity to present evidence and argument consistent with *Marlette* and *Heydon* in an appropriate forum.  We are a court of record and not the appropriate forum under the circumstances.  Our Supreme Court's order of remand did not retain jurisdiction, so we believe we are authorized to conclude, in our reconsideration, that the matter should be remanded further.  Therefore, we remand the remaining issues in this matter to the trial court, where the presentation of evidence is proper, and the parties and trial court will have the benefit of guidance from this Court and our Supreme Court.

## VIII.  CONCLUSION

The trial court's dismissal of plaintiffs' nuisance claims remains vacated in part and remanded to the trial court for further proceedings consistent with the portion of our prior majority opinion discussing nuisance.  The trial court's dismissal of plaintiffs' trespass claims also remains vacated in part to the extent plaintiffs' claim is based on defendants unreasonably overburdening the easement or straying from its boundaries.  The trial court's finding that defendants had established an easement by necessity remains reversed.

We hold that the Laudenslager, Beaudoin, and Christie defendants have established a valid easement by prescription as described and limited more fully above.  The trial court therefore need not reconsider the nature and extent of their easements.  We hold that Kraska has

established an identical easement by prescription at least to the extent of seasonal use. We further hold that no defendants could establish an easement with a greater scope than the easements held by the Laudenslager, Beaudoin, and Christie defendants. However, we are concerned by the equities of the situation and conclude that the parties should be afforded a full and fair opportunity to present and respond to evidence and argument with the benefit of *Marlette*, *Heydon*, and our present opinion. Therefore, on remand, the remaining defendants other than the Laudenslager, Beaudoin, and Christie defendants shall have the opportunity to present further evidence and argument in support of the existence and scope of any prescriptive easements they might have. Plaintiffs shall likewise have the opportunity to respond.

We therefore otherwise vacate the trial court's order and remand for further proceedings and consideration. We retain jurisdiction. We direct that the parties shall bear their own costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael F. Gadola

# Court of Appeals, State of Michigan

## ORDER

Mary Ann Lamkin v Eugene Hartmeier

Docket No. 326986

LC No. 12-026600-NZ

Amy Ronayne Krause
Presiding Judge

Jane E. Markey

Michael F. Gadola
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/Amy Ronayne Krause

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

September 17, 2019
Date

Chief Clerk