## CROZE *v.* QUINCY MINING CO.

1. ADVERSE POSSESSION—EVIDENCE—BURDEN OF PROOF.

    Whether entry is made on land as a cotenant or as a stranger the burden of establishing title by adverse possession is on the person making the entry.

2. SAME.

    The quantum of evidence necessary to establish the defense of title by adverse possession is much less in case of entry as a stranger than as a tenant in common.

3. SAME—TENANTS IN COMMON—INTENT.

    In case of cotenants an ouster is not effected, unless the possession asserted as adverse has been taken and continued with the intent to oust the other tenants.

4. SAME.

    Where a cotenant claiming title by adverse possession knows that an interest in the property was assessed for 15 years before suit to a claimant of such interest and the taxes paid by him, and, during the time, through its attorney, attempted to buy claimant's interest, such facts constitute a recognition of claimant's title and tend to show the holding of possession of such cotenant without the intention of ousting claimant.[1]

5. EVIDENCE—ADMISSIBILITY.

    Evidence that defendant attempted to purchase plaintiff's interest as cotenant was inadmissible, in an action of ejectment, on the question of adverse possession, where the authority of an attorney to represent defendant in the purchase was not shown.

6. TENANTS IN COMMON—ADVERSE POSSESSION—INCONSISTENT USES.

    The use by a cotenant, a mining company, of cut-over lands, for the purpose of obtaining water for use on its adjoining land and in the locomotives of its railroad passing over a corner of the land, is not a use inconsistent with the possession as cotenant.

---

[1] On the question of presumption of ouster of one tenant in common from long continued undisturbed possession of another, see note in 10 L. R. A. (N. S.) 185.

Error to Houghton; O'Brien, J. Submitted April 5, 1917. (Docket No. 47.) Decided December 28, 1917. Rehearing denied March 28, 1918.

Ejectment by John M. Croze against the Quincy Mining Company. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*J. F. Hambitzer,* for appellant.

*Hanchette & Lawton,* for appellee.

BIRD, J. This is an ejectment case in which plaintiff sought to establish his right in fee to a one-third interest in and to the northwest quarter of the southwest quarter of section 23, township 55 north, range 33 west, in Houghton county. Defendant had judgment by direction of the court, and plaintiff assigns error.

It appears from the record that Robert Metzner, owner and common grantor of the parties, in 1873 conveyed an undivided one-third interest in the premises to John Ellenbecker, and in the same year conveyed a two-thirds interest therein to Frederick Voss. Ellenbecker, in March, 1890, conveyed the one-third interest to Peter Primeau, who, in turn, conveyed the same to plaintiff, in October, 1914. Voss conveyed the two-thirds interest to Charles D. Hanchette in July, 1888. In May, 1888, one Shelton, who had received deeds from the auditor general for delinquent taxes for the years 1876 to 1881, also conveyed his interest to Hanchette. Hanchette immediately thereafter conveyed his interest to defendant. Defendant went into possession soon after its purchase, and now claims to own the entire 40 acres. This 40 is what is termed "cutover lands," and has never been cultivated. The stamp mill of defendant is located on an adjoining 40, and its boilers are supplied by water

from a creek which runs through one corner of the land. Defendant's railway as well as the Copper Range Railway passes over one corner of it, and their locomotives are supplied with water from the same source. Aside from these uses no other use appears to have ever been made of the premises. From the date of its purchase to the year 1900 defendant paid the taxes on the entire tract. Since 1900 the taxes have been assessed, two-thirds to defendant, and one-third to the plaintiff, and both have paid their respective taxes. The plaintiff learned, in August, 1915, that defendant questioned his title to the one-third interest, and soon thereafter he brought this suit to have it determined.

Defendant claims it went into possession under a quitclaim deed purporting to convey the entire fee, that its possession has been exclusive and hostile for upwards of 20 years, and that whatever rights plaintiff had therein have lapsed by force of the statute of limitations. Plaintiff claims that defendant's quitclaim deed conveyed only a two-thirds interest in the premises, and that its entry thereon was lawful, and that it thereby became a tenant in common with his grantors and afterward with himself; that its use during the years of possession has not been inconsistent with the fact of cotenancy; that it has never claimed to own the one-third interest, and has never expressly or impliedly given him, or his predecessors in title, notice that it was holding possession adversely to them, and therefore the statute of limitations never commenced to run—citing *Donahue* v. *Vosper*, 189 Mich. 78 (155 N. W. 407). It is further insisted by plaintiff that during the time defendant has had possession it has recognized plaintiff's title by permitting him to pay the taxes thereon and by attempting to purchase the one-third interest of his grantor, Mr. Primeau.

1. Defendant's counsel concede that had defendant entered into possession under a quitclaim deed conveying an undivided two-thirds interest therein, it would have become a tenant in common with plaintiff, and before it could have set in motion the statute of limitations it would have had to notify plaintiff that it disputed his title, but it is insisted that it did not so enter; it entered under a quitclaim deed which was placed of record, purporting to convey the entire fee, and that this amounted in the law to a disseisin of plaintiff. The distinction counsel make appears to be supported by the authorities. But whether defendant entered as a cotenant or as a stranger, the burden was upon it to establish the fact of adverse possession. The *quantum* of evidence, however, necessary to establish that defense, would be very much less if it entered as a stranger. This distinction is well pointed out in *Foulke* v. *Bond*, 41 N. J. Law, 527, where it was said:

"In the acquisition of title by adverse possession the distinction between strangers and tenants in common relates to the character of the evidence necessary to prove that the possession was adverse. The relations between the joint owners are presumed to be amicable rather than hostile, and the acts of one affecting the common property are presumed to be done for the common benefit. Freeman, Cotenancy, § 166. This presumption is liable to be overcome by the circumstances of the particular case. It is a rule of evidence merely, which enters into the question whether the possession is in fact adverse, and not a rule of law, which forbids the application of the statute of limitations to persons who occupy to each other the relation of tenants in common.

"It is with respect to those two essential qualities of the possession, on which title by lapse of time is founded — hostility in fact to the title of the true owner, and notoriety of the adverse claim—that the fact of a cotenancy between the parties becomes an important element. If the parties are strangers in

title, possession and the exercise of rights of owner-
ship are in themselves, in the absence of explanatory
evidence, proof of an ouster of the true owner; where-
as, in cases of privity of title such as subsists be-
tween tenants in common, the acts of possession of
one tenant will, in the absence of satisfactory evi-
dence to the contrary, be referred to the community
of title, and there must be clearer and more decisive
evidence of an ouster by one tenant in common of
his associate than is necessary to prove that a person
having no right to possession had ousted an owner in
severalty. *Doe, ex dem. Reed,* v. *Taylor,* 5 Barn. &
Ad. 575, 2 Nev. & M. 508, L. J. 3 K. B. (N. S.) 67;
*Prescott* v. *Nevers,* 4 Mason (U. S.), 330 (Fed. Cas.
No. 11,390) ; Freeman, Cotenancy, § 221. An ouster
by a tenant in common does not differ in its nature
from any other ouster, in any respect, except in the
degree of evidence required; in other cases the as-
sumption of ownership is more clearly adverse; in
case of a tenant in common such assumption of own-
ership, and the acts which indicate it, may be con-
sistent with an acknowledgment of the rights of the
cotenant, and therefore, acts which are decisive in the
one case are equivocal and insufficient in the other."

There is, however, a well-recognized exception to
the foregoing rule, in the rule that in case of cotenants
an ouster is not effected, unless the possession asserted
as adverse has been taken and continued with the
intent to oust the other tenants. *Price* v. *Hall,* 140
Ind. 314 (39 N. E. 941, 49 Am. St. Rep. 196) ; *Maple*
v. *Stevenson,* 122 Ind. 368 (23 N. E. 854) ; *Peter* v.
*Stephens,* 11 Mont. 115 (27 Pac. 403, 28 Am. St. Rep.
448) ; *Evans* v. *Templeton,* 69 Tex. 375 (6 S. W. 843,
5 Am. St. Rep. 71) ; *Flynn* v. *Lee,* 31 W. Va. 487 (7
S. E. 430) ; *McDonald* v. *Fox,* 20 Nev. 364 (22 Pac.
234) ; *La Frombois* v. *Jackson,* 8 Cow. (N. Y.) 589
(18 Am. Dec. 463) ; *Miller* v. *Myers,* 46 Cal. 535;
*Culver* v. *Rhodes,* 87 N. Y. 354; *Newell* v. *Woodruff,*
30 Conn. 492; *Cummings* v. *Wyman,* 10 Mass. 464.

Applying this exception, if defendant knew that the
one-third interest was assessed for 15 years before

suit to plaintiff and the taxes paid by him, and if defendant, during the time, through its attorney, attempted to buy plaintiff's interest in the premises, these facts would be a recognition of plaintiff's title and have a tendency to show that defendant was not holding possession with the intention of ousting plaintiff. *Van Ormer* v. *Harley*, 102 Iowa, 150 (71 N. W. 241).

But counsel say the testimony offered to show that defendant attempted to purchase plaintiff's interest was inadmissible and, upon motion, was stricken out. We think the ruling of the trial court was right in excluding the testimony on the ground that the authority of the attorney to represent defendant in the purchase had not been shown, but we are of the opinion that there was sufficient in the case to make defendant's intention a question of fact. There is no claim that defendant at any time claimed to own this one-third interest. Its limited use by defendant was not inconsistent with its possession as a cotenant. If defendant had in good faith intended to claim the entire title it is difficult to understand why it should have permitted one-third of the premises to be assessed to plaintiff and his predecessors for 15 years, knowing, as it must have, that when they paid the taxes they did so in the belief that they were the undisputed owners thereof. The fact that defendant permitted this to be done for 15 years is very persuasive that it did not intend, during that time, to claim the entire title. While it is not conclusive of the intent, it is a circumstance to be taken into consideration in determining defendant's intention. *Rayner* v. *Lee*, 20 Mich. 387; *Murray* v. *Hudson*, 65 Mich. 676 (32 N. W. 889); *Sauers* v. *Giddings*, 90 Mich. 50 (51 N. W. 265); *Whitaker* v. *Shooting Club*, 102 Mich. 460 (60 N. W. 983); *Kastl* v. *Arthur*, 135 Mich. 278 (97 N. W. 711).

In the first case cited in considering a like question the court said:

"And on this point, the evidence given by the complainant that the land was continuously assessed on the township roll as resident lands, and the taxes paid by some one in complainant's chain of title, was not only admissible, but very significant."

2. It is asserted by plaintiff that the tax deeds are void because of the absence of the dollar mark or sign or anything to indicate the value of the premises assessed, and that the court was in error in refusing to so charge the jury. The trial court did not pass upon the validity of the deeds. The record in this court is not very satisfactory with reference to the tax record, from which the sales were made. The plaintiff does not brief the question, and we do not understand defendant seriously contends they were valid. The use defendant sought to make of them was to characterize its entry on the premises under its defense of adverse possession, and counsel insist that for this purpose it would be immaterial whether they were valid or invalid. Under this theory we are unable to see how it would become important whether the deeds were valid or invalid. We think the trial court was in error in directing the verdict.

The judgment must be reversed, and a new trial ordered, with costs to plaintiff.

KUHN, C. J., and STONE, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred with BIRD, J.

OSTRANDER, J. I think there was a question for the jury, and therefore concur in the reversal of the judgment.