MACKINAC ISLAND DEVELOPMENT COMPANY, LTD v BURTON
ABSTRACT & TITLE COMPANY

Docket No. 68008. Submitted August 4, 1983, at Grand Rapids.—
Decided March 5, 1984. Leave to appeal applied for.

Plaintiff, Mackinac Island Development Company, Ltd., brought
an action against Burton Abstract and Title Company in the
Mackinac Circuit Court, alleging that Burton Abstract insured
the marketability of land in which plaintiff had acquired an
interest but failed to disclose that the State of Michigan
claimed an undivided interest in a portion of the land. The
court ordered the state and others to be joined as parties. The
state asserted its claim in the land and sought an order
quieting title. Testimony at trial indicated the following. The
acts which plaintiff claims gave rise to adverse possession
began in 1959 when one of plaintiff's predecessors in interest,
Oxford Group, Moral Re-Armament, MRA, Inc., of New York,
cleared a ten-foot wide path along the property line separating
the disputed parcel from lands owned by the Mackinac Island
State Park Commission and erected a barbed wire fence
thereon. The area around the fence was annually cleared of
brush. A picnic site was also cleared which MRA used several
times annually for its own picnics, each attended by 50 to 70
persons. An MRA employee testified by deposition that he
asked picnicking trespassers to leave on several different occa-
sions. "No trespassing" signs were posted on the fence. Stu-
dents of Mackinac College, also one of plaintiff's predecessors in
interest, used the disputed parcel for cross-country skiing start-
ing in 1966 or 1967. Plaintiff and its predecessors also paid
property taxes on 100 percent of the parcel. An attorney for
MRA of NY testified that, although MRA received some tax
statements showing that it owned only 22/63 of the disputed
parcel, tax officials told MRA to ignore the fraction and taxed

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 3 Am Jur 2d, Adverse Possession §§ 1, 60, 248.
[2] 3 Am Jur 2d, Adverse Possession § 253.
[3] 3 Am Jur 2d, Adverse Possession §§ 32, 173.
[4] 3 Am Jur 2d, Adverse Possession § 205.

MRA as a 100 percent owner. After conducting a title search, MRA uncovered information indicating that the state had record title to an undivided portion of the parcel. Its attorney advised MRA at that time to erect the barbed wire fence and not to contact the state with regard to its record title interest in the property in the belief that a state claim would not be valid. Plaintiff and its predecessors continued to pay 100 percent of the property taxes on the parcel until approximately 1980, when plaintiff informed the appeals board of the local taxing authority that the state claimed a portion of the disputed parcel. By this time, if plaintiff were permitted to claim title by adverse possession, such a claim had already ripened. In 1964, after considerable bargaining, the state acquired from MRA an avigation easement over the disputed parcel in connection with the construction of the Mackinac Island Airport. During negotiations, the state apparently did not assert or discuss its ownership interest in the parcel. As a result of defoliation of the property caused by the state in creating the easement, a washout occurred which damaged the land. After MRA threatened a lawsuit and following further negotiations, defendant state reached a settlement with MRA and paid restitution for the damaged land. Again, the state's ownership interest was not mentioned nor, apparently, was the amount of damages reduced by a proportion equal to the state's interest in the land. Defendant state's use of the disputed parcel consisted of its maintenance of a state road which traversed the entire island near the shoreline and cut through the disputed parcel and maintenance of a picnic site next to the road in an area known as "Brown's Brook". The park was described as being smaller than the trial courtroom and contained one picnic table and a barbecue grill. Maintenance by the state included, at least since 1956, clearing brush and resetting stones at the park. The court, Nicholas J. Lambros, J., held that plaintiff had established the elements of adverse possession against the state and granted judgment accordingly. The state appealed. *Held:*

1. A party may acquire title to state land by adverse possession.

2. The burden of proof of hostile and notorious adverse possession is greater than normal where a cotenant is claiming title to property by adverse possession against another cotenant.

3. Plaintiff has met the burden of showing adverse possession against the state.

Affirmed.

1. ADVERSE POSSESSION — STRICT CONSTRUCTION — BURDEN OF PROOF.

The doctrine of adverse possession is strictly construed, and the party alleging title by adverse possession must prove by clear and positive proof that his possession was actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period, and under cover of claim of right; an adverse claimant is permitted to add his predecessor's periods of possession only if he can establish privity of estate either by mention of the disputed lands in instruments of conveyance or orally at the time of transfer.

2. ADVERSE POSSESSION — ACTIONS — EVIDENCE.

Adverse possession is established upon the facts of each case and the character of the premises; acts of ownership which openly and publicly indicate an assumed control or use consistent with the character of the premises are sufficient.

3. ADVERSE POSSESSION — COTENANCY — BURDEN OF PROOF.

The burden of proof of hostile and notorious adverse possession is greater than normal where a cotenant is claiming title to property by adverse possession against another cotenant.

4. ADVERSE POSSESSION — STATE LANDS.

A party may acquire title to state land by adverse possession (MCL 600.5821[1]; MSA 27A.5821[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Terrence P. Grady* and *Russell E. Prins,* Assistants Attorney General, for State of Michigan.

*Stroup, Brown & Mulhauser, P.C.* (by *Nathanial W. Stroup* and *Charles W. Johnson),* for Burton Abstract and Title Company.

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen J. Tresidder),* for Humbard Christian Development Center, Inc.

Before: V. J. BRENNAN, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

SHEPHERD, J. The principal issues raised in this appeal relate to the nature and sufficiency of proof required to establish a claim of adverse possession against a cotenant and against the State of Michigan. We hold that a claim of adverse possession may be made against the state and that the proofs in this case were sufficient to establish the claim.[1]

Plaintiff originally sought damages from Burton Abstract and Title Company under a title insurance policy covering Mackinac Island property which had been deeded to plaintiff and to which defendant State of Michigan also claimed record title to a 41/63 interest. Defendant state was subsequently added as a third-party defendant on November 15, 1979, on defendant Burton Abstract's motion. On March 28, 1981, plaintiff filed its first amended complaint which named the state as a defendant and raised the claim of adverse possession. On January 8, 1981, St. Paul Title Insurance Company was substituted for Burton Abstract as defendant. After a separate trial on the issue of adverse possession, the trial court ruled that defendant state had lost the 41/63 undivided interest it held in the parcel of land involved as the result of plaintiff's adverse possession of the property. Defendant state now appeals as of right.

The disputed parcel consists of 36.6 acres with 2,280 feet of waterfront. Defendant state obtained its 41/63 interest in the disputed parcel between the years 1923 and 1927. Plaintiff's predecessors in title include, *inter alia:* Stonecliffe Development Company; Humbard Christian Development Center, Inc.; Mackinac College; Stonecliffe Associates; Oxford Group, Moral Re-Armament, MRA, Inc., of

---

[1] The general adverse possession statute is MCL 600.5801; MSA 27A.5801. The statute relating to a claim of adverse possession against the state is MCL 600.5821; MSA 27A.5821.

Michigan (MRA of Michigan); and Oxford Group, Moral Re-Armament, MRA, Inc., of New York (MRA of NY). These predecessors in title trace their claims to various warranty deeds executed and recorded as early as 1946. Plaintiff's interest was acquired in 1977 from its most recent predecessor.

The result of the deeds to plaintiff and its predecessors is that plaintiff now has record title to 100 percent of the property tracing its title back to 1946. As indicated, the state can show record title to a 41/63 interest dating from the period 1923 to 1927. The state acknowledges that plaintiff can legitimately claim an interest in 22/63 of the parcel. The plaintiff now claims that the remaining 41/63 belongs to it by reason of adverse possession.

The acts which plaintiff claims gave rise to adverse possession began in 1959 (some 13 years after plaintiff's predecessors acquired record title) when one of plaintiff's predecessors in interest, MRA of NY, cleared a ten-foot wide path along the property line separating the disputed parcel from lands owned by the Mackinac Island State Park Commission and erected a barbed wire fence thereon. The area around the fence was annually cleared of brush. A picnic site was also cleared which MRA used several times annually for its own picnics, each attended by 50 to 70 persons. An MRA employee testified by deposition that he asked picnicking trespassers to leave on several different occasions. "No trespassing" signs were posted on the fence. Students of Mackinac College, also one of plaintiff's predecessors in interest, used the disputed parcel for cross-country skiing starting in 1966 or 1967.

Plaintiff and its predecessors also paid property

taxes on 100 percent of the parcel. An attorney for MRA of NY testified that, although MRA received some tax statements showing that it owned only 22/63 of the disputed parcel, tax officials told MRA to ignore the fraction and taxed MRA as a 100 percent owner. After conducting a title search, MRA uncovered information indicating that the state had record title to an undivided portion of the parcel. Its attorney advised MRA at that time to erect the barbed wire fence and not to contact the state with regard to its record title interest in the property in the belief that a state claim would not be valid. Plaintiff and its predecessors continued to pay 100 percent of the property taxes on the parcel until approximately 1980 when plaintiff informed the appeals board of the local taxing authority that the state claimed a portion of the disputed parcel. By this time, if plaintiff were permitted to claim title by adverse possession, such a claim had already ripened.

In 1964, after considerable bargaining, the state acquired from MRA an avigation easement over the disputed parcel in connection with the construction of the Mackinac Island Airport. During negotiations, the state apparently did not assert or discuss its ownership interest in the parcel. As a result of defoliation of the property caused by the state in creating the easement, a washout occurred which damaged the land. After MRA threatened a lawsuit and following further negotiations, defendant state reached a settlement with MRA and paid restitution for the damaged land. Again, the state's ownership interest was not mentioned nor, apparently, was the amount of damages reduced by a proportion equal to the state's interest in the land.

Defendant state's use of the disputed parcel

consisted of its maintenance of a state road which traversed the entire island near the shoreline and cut through the disputed parcel and maintenance of a picnic site next to the road in an area known as "Brown's Brook". The park was described as being smaller than the trial courtroom and contained one picnic table and a barbecue grill. Maintenance by the state included, at least since 1956, clearing brush and resetting stones at the park.

At the close of proofs, the trial court concluded that plaintiff had established by clear and positive proof the essential elements of adverse possession. In its opinion, the trial court concluded that the state had actual notice of plaintiff's claim to the disputed parcel since at least 1959, based upon the fact that plaintiff's predecessor in title, MRA of NY, had installed a fence; that two monuments placed in the ground by the state along one boundary of the disputed parcel indicated the boundary to lie between private land and state park property; and that the state had failed to assert its interest in the disputed parcel during negotiations concerning the avigation easement and damages caused to the parcel as the result of the washout.

The trial court also concluded that, even if the state did not have actual notice of plaintiff's claim to the disputed parcel, plaintiff had established that it had openly, notoriously, visibly, exclusively, and hostilely possessed the parcel in such a manner as to raise a presumption of knowledge by the state based upon the testimony indicating that MRA had: installed and maintained the fence; established a picnic site; informed unauthorized persons that they were trespassing on private property; and paid property taxes as the 100 percent owner of the disputed parcel. The trial court also recognized that one cotenant could hold property adversely to another and pointed out that the

record was devoid of any evidence indicating that the state had exercised any concurrent rights of possession in the disputed parcel. The trial court further recognized that a private party could adversely possess against the state pursuant to *Caywood v Dep't of Natural Resources,* 71 Mich App 322; 248 NW2d 253 (1976).

The trial court's ruling did not effectively award the road or the Brown's Brook picnic area to plaintiff for, as plaintiff indicated at trial, plaintiff made no claim of title to the state road or to the attached picnic area.

On appeal, defendant state argues that the trial court erred in finding that plaintiff had adversely possessed the property sufficiently to acquire full title and in ruling that plaintiff, a private party, could adversely possess against the state. We disagree and affirm.

I

Defendant state argues that its maintenance of the state road and Brown's Brook picnic site negate plaintiff's claim of exclusive possession. In fact, argues defendant, both parties made similar use of the property. Nor did the actions of the local taxing authority or the placement of boundary markers show adverse possession by plaintiff, according to defendant. Furthermore, it is contended, defendant's failure to mention its interest in the property during negotiations for the avigation easement and the washout damages was irrelevant to the adverse possession issue since defendant was under no duty to communicate its interest to plaintiff and only a small part of the parcel was involved in those negotiations. Therefore, given the added burden placed upon plaintiff by

the fact that the state was its cotenant, the proofs were insufficent to show adverse possession.

The general test for establishing adverse possession was described by this Court in *Caywood, supra,* pp 331-332:

"In order to secure title by adverse possession, the claimant's possession must be actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period and under color or claim of right. *Burns v Foster,* 348 Mich 8; 81 NW2d 386 (1957); *Rose v Fuller,* 21 Mich App 172; 175 NW2d 344 (1970); *Whitehall Leather Co v Capek,* 4 Mich App 52; 143 NW2d 779 (1966). Whether adverse possession is established depends upon the facts of each case and the character of the premises. *Burns v Foster* and *Whitehall Leather Co v Capek, supra.* Acts of ownership which openly and publicly indicate an assumed control or use consistent with the character of the premises are sufficient. *Monroe v Rawlings,* 331 Mich 49; 49 NW2d 55 (1951); *Rose v Fuller, supra.* The doctrine of adverse possession is strictly construed. The party alleging title by adverse possession must prove the same by clear and positive proof. *Burns v Foster* and *Rose v Fuller, supra.* An adverse claimant is permitted to add his predecessors' periods of possession if he can establish privity of estate either by mention of the disputed lands in instruments of conveyance or orally at the time of transfer. *Siegel v Renkiewicz Estate,* 373 Mich 421; 129 NW2d 876 (1964); *Arduino v City of Detroit,* 249 Mich 382; 228 NW 694 (1930). Equity cases are reviewed *de novo.* The trial judge's findings of fact, however, will not be overturned or modified unless they are clearly erroneous or the reviewing court is convinced it would have reached a different result had it occupied the position of the trial court. *Roberts v Duddles,* 47 Mich App 601; 209 NW2d 720 (1973); *Ogorek v Loisell,* 33 Mich App 245; 189 NW2d 738 (1971)." (Footnote omitted.)

Where a party claims adverse possession against a cotenant, the burden is greater and additional

rules become applicable. First, acts of possession by a cotenant will be presumed to be done consistently with the title of the other cotenant rather than adversely. *Croze v Quincy Mining Co,* 199 Mich 515, 518; 165 NW 786 (1917); *Dunlop v Twin Beach Park Ass'n, Inc,* 111 Mich App 261, 265; 314 NW2d 578 (1981). The rationale underlying this presumption is the rule that every cotenant is entitled to possess and use every part of the whole property. *Merritt v Nickelson,* 407 Mich 544, 555; 287 NW2d 178 (1980) (concurring opinion by MOODY, J.). Second, the burden of proof on a cotenant claiming title to property adversely to another cotenant is much greater than the burden placed on one who has no such interest in the property. *Croze, supra; Dunlop, supra,* p 264. This higher burden relates specifically to proof of hostility and notoriety. *Croze, supra,* pp 518-519; *Dunlop, supra,* p 265.

Findings of fact made by the trial court will not be set aside unless clearly erroneous. GCR 1963, 517.1. We find none of the trial court's findings of fact to be erroneous. The trial court found that an avigation easement had been granted by MRA to the State of Michigan and the Mackinac Island State Park Commission on July 14, 1964, in which the state identified MRA as the owner of the real property subject to the easement. The trial court also found that, during negotiations, defendants treated MRA as the owner of the real property subject to the easement and made no claim whatsoever to any undivided interest in the parcel. The trial court also found that plaintiff had paid 100 percent of the taxes on the land in question, that MRA had erected a fence along the boundaries of the land in 1959, that portions of the land had been maintained and developed by plaintiff and its

predecessors, that boundary markers erected in approximately 1912 were located at each end of the fence and were inscribed "State" or "State Park" on one side and "PC 2" or "PC 2 Boundary", and that tax records described the state's undivided interests to be a parcel known as Private Claim One rather than Private Claim Two, by which the disputed parcel was known, although the metes and bounds of both parcels were described in the same terms.

We must agree with defendant state, however, that a portion of the trial court's conclusions of law were erroneous. Certain of plaintiff's actions were not necessarily indicative of exclusive, hostile possession of the parcel insofar as a cotenant was concerned, contrary to the trial court's conclusions. In particular, we are not convinced that, standing alone, the fence which was erected in 1959 and the picnics and skiing enjoyed by plaintiff's predecessors were sufficient to apprise the cotenant state of plaintiff's adverse possession. However, any error in these conclusions is harmless because we are convinced that the state was sufficiently put on notice of plaintiff's claim to exclusive control over the land in 1964 when the avigation easement was acquired (more accurately, as early as the start of negotiations, although the date on which negotiations began does not appear in the record before us). The state's failure to indicate its own interests during those negotiations or in the document itself was a clear indication that the state itself believed plaintiff to be the sole owner of the land. This is made even more evident by the state's payment of restitution to plaintiff for the washout which resulted after the state had obtained the easement.

The statutory 15-year possessory requirement in

order to show adverse possession is still met, even if the period began to run with the creation of the avigation easement, since that event occurred on July 14, 1964, and the state was not made a party to this action until November, 1979. We believe that this event (the granting of the easement), particularly when considered in conjunction with the remaining hostile and open acts (including erection of the fence, payment of taxes and care and maintenance of the land), sufficiently validate plaintiff's claim to the land as sole owner.

We also conclude that the remaining findings of the trial court, and the conclusions drawn therefrom, were not clearly erroneous and the elements of adverse possession were proven. Clearly plaintiff's possession of the property was exclusive and uninterrupted for at least the required 15-year period. The only use made of the land by defendant state was its maintenance of the state road and the Brown's Brook picnic area. While the trial court made no findings of fact or conclusions of law as to either of those specific areas, the record indicates that plaintiff was not claiming title to that portion of the parcel, apparently believing that defendant state had acquired a prescriptive right many years prior to the events in question. We conclude that, while prescriptive rights may merge with a later acquired property interest in land (see *von Meding v Strahl,* 319 Mich 598, 605; 30 NW2d 363 [1948]), the state's use of the land remained a prescriptive easement for purposes of plaintiff's claim of adverse possession in the instant case, primarily because the state, as has been shown, in no way indicated that it was aware of its ownership interests in the balance of the parcel. Its maintenance functions as regarded the road and picnic area apparently remained con-

stant over time regardless of changing ownership interests and in no way varied from the state's maintenance of the same road as it traversed other property on the island, whether publicly or privately owned. Thus, we cannot say that defendant state's maintenance efforts constituted "use" of the parcel so as to avoid plaintiff's claim of exclusive and uninterrupted possession.

It is uncontested that possession by plaintiff and its predecessors was actual and continuous as was appropriate to the land's character for the statutory 15 years. Furthermore, the elements of visible, open, and notorious possession were properly found to be satisfied in the instant case. The trial court made clear in its conclusion that it was aware that the parties were cotenants. While it did not discuss each of the factors or facts with a view to the heavier burden borne by a cotenant who wishes to prove adverse possession, we agree with the ultimate conclusion that adverse possession was successfully proven here. As discussed previously, we do not believe that plaintiff's erection and maintenance of a fence, its maintenance of the land, or its use of the land for picnics and skiing are events which are sufficient, in and of themselves, to successfully show open and notorious possession against a cotenant. However, these incidents, when coupled with plaintiff's continued payment of 100 percent of the taxes and its listing on county tax rolls as 100 percent owner of the correctly and specifically listed property and, more importantly, defendant state's constructive acknowledgment of plaintiff as the sole owner for purposes of the avigation easement and compensation for the washout, combined to show that defendant state had notice of plaintiff's claim of sole ownership of the property. This notice is what the required elements of adverse possession are in-

tended to provide and the purpose that the greater burden upon a cotenant is intended to serve. In the instant case, there is no indication from the record that the state was ever aware during the 20 years preceding this lawsuit that it possessed an interest in this disputed parcel.

Since we cannot conclude that the findings and conclusions made by the trial court were clearly erroneous, we affirm the trial court's ruling that plaintiff proved its claim of adverse possession against defendant state.

## II

Defendant state next argues that title may not be acquired by adverse possession against the state. In support of its position, the state cites several Supreme Court opinions: *Young v Thendara, Inc,* 328 Mich 42; 43 NW2d 58 (1950); *Staub v Tripp,* 248 Mich 45; 226 NW 667 (1929); *Grand Rapids Trust Co v Doctor,* 222 Mich 248; 192 NW 641 (1923); *Merritt v Westerman,* 165 Mich 535; 131 NW 66 (1911).

Contrary to these opinions, however, is MCL 600.5821(1); MSA 27A.5821(1) which provides:

"No action for the recovery of any land shall be commenced by or on behalf of the people of this state unless it is commenced within 15 years after the right or title of the people of this state in the land first accrued or within 15 years after the people of this state or those from or through whom they claim have been seised or possessed of the premises, or have received the rents and profits, or some part of the rents and profits, of the premises."

In *Caywood, supra,* this Court, relying on the above quoted statute, *Caywood, supra,* p 328, held

that a claim of title by adverse possession can be asserted against the state. *Caywood, supra,* p 331. This conclusion was reached after a thorough discussion of prior relevant case law. *Caywood, supra,* pp 327-331.

We concur in the analysis utilized and the conclusion reached in *Caywood,* as did the trial court in the instant case. As this Court pointed out in *Caywood,* state land cannot be acquired by adverse possession unless there is legislation to the contrary. *Caywood, supra,* p 327. In Michigan, however, there is such legislation which, for whatever reason, was ignored by the Supreme Court in the cases cited by defendant. We conclude, therefore, that *Caywood* reached the correct result in allowing adverse possession against the state. See, also, *Chamberlain v Ahrens,* 55 Mich 111; 20 NW 814 (1884).

We would caution, however, that Chief Judge DANHOF offered, in his concurrence in *Caywood,* what we consider to be a well-founded qualification in cases where an individual claims adverse possession against the state: "[g]reater notoriety may be required to give rise to a rational presumption of notice as against a governmental unit than as against an individual." *Caywood, supra,* p 336. While agreeing with this principle, we find the additional burden to be satisfied in the present case: defendant state was aware that plaintiff and its predecessors claimed ownership of the land and at least constructively treated or acknowledged plaintiff as the sole owner. We deem the extra burden as to notice to therefore have been met in the present case.

CONCLUSION

Plaintiff established by clear and convincing

evidence that it had adversely possessed the disputed parcel of land against its cotenant. Plaintiff was not precluded from adversely possessing the land simply because its cotenant was the State of Michigan.

Affirmed.

No costs, a public question being involved.